UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

STEPHANIE SMITH CIVIL ACTION

VERSUS

STATE OF LOUISIANA, ET AL. NO. 24-00631-BAJ-EWD

# RULING AND ORDER

This is a Family and Medical Leave Act ("FMLA") case. Plaintiff alleges that her employer, the Louisiana Department of Veterans Affairs ("LDVA"): (1) interfered with, restrained, and denied the exercise of her FMLA rights; and (2) discriminated and retaliated against her for requesting and exercising FMLA-protected rights.

Defendants filed a Motion for Summary Judgment to dismiss Plaintiff's claims against them. (Doc. 44). Plaintiff opposes the Motion. (Doc. 47). Defendants filed a Reply Brief. (Doc. 48). For the following reasons, the Court will **DENY** Defendants' Motion for Summary Judgment.

## I. BACKGROUND

Plaintiff was employed at LDVA from 2007 and ultimately served as Accountant Administrator 3 and the Chief Financial Officer until her retirement on January 8, 2023. (Doc. 44-25 ¶ 3; Doc. 47-1 ¶ 3; Doc. 47-2 ¶ 1; Doc. 48-1 ¶ 1). Plaintiff was responsible for directing all fiscal and fund management activities for all LDVA budget programs, performed professional administrative and executive fiscal management work, and supervised eight employees. (Doc. 44-25 ¶ 4; Doc. 47-1 ¶ 4).

On Friday, August 19, 2022, Plaintiff requested leave to care for her husband

following an injury he sustained. (Doc. 44-25 ¶ 8; Doc. 47-1 ¶ 8). LDVA's Human Resources Department immediately provided Plaintiff with FMLA paperwork to be signed by Plaintiff's husband's doctor. (Doc. 44-25 ¶ 9; Doc. 47-1 ¶ 9; Doc. 47-2 ¶ 4; Doc. 48-1 ¶ 4). Between Monday, August 23, 2022, and August 31, 2022, communications occurred between Plaintiff, her supervisor, and LDVA's Chief of Staff regarding Plaintiff's work responsibilities while she was out on leave. (Doc. 44-25 ¶ 10; Doc. 47-1 ¶ 10). The Parties dispute the amount and degree of work that Plaintiff performed between these dates. Defendants contend that Plaintiff's supervisor communicated with Plaintiff "regarding the handling of [Plaintiff's] work while [she] was on sick leave." (Doc. 44-25 ¶ 10). Plaintiff, in contrast, "denies Defendants' characterization that the communications were merely informational and contends the communications required her continued participation in agency operations while on leave." (Doc. 47-1 ¶ 10). On August 31, 2022, Plaintiff's supervisor, LDVA's Chief of Staff, and Plaintiff conducted Plaintiff's performance review for the July 1, 2021 – June 30, 2022 period and a planning meeting via Zoom. (Doc. 44-25 ¶ 12; Doc. 47-1 ¶ 12). Plaintiff received a "Need[s] Improvement/Unsuccessful" evaluation after the meeting. (Doc. 47-2 ¶ 9; Doc. 48-1 ¶ 9).

Also on August 31, 2022, Plaintiff's husband's doctor submitted to LDVA the FMLA documentation on behalf of Plaintiff seeking FMLA leave to care for her husband. (Doc. 44-25 ¶ 14; Doc. 47-1 ¶ 14). LDVA then placed Plaintiff on FMLA leave retroactive to August 19, 2022. (Doc. 44-25 ¶ 15; Doc. 47-1 ¶ 15). On

September 2, 2022, Plaintiff notified her supervisor and LDVA's Chief of Staff that she would not be able to work, as her husband was unable to provide his own care. (Doc. 44-25 ¶ 16; Doc. 47-1 ¶ 16). LDVA's Chief of Staff notified Plaintiff that LDVA's Human Resources Department would send the FMLA leave approval notice to her. (Doc. 44-25 ¶ 17; Doc. 47-1 ¶ 17). From September 3, 2022, until Plaintiff returned to work on December 2, 2022, Plaintiff's supervisor and LDVA's Chief of Staff did not have contact with Plaintiff. (Doc. 44-25 ¶ 20; Doc. 47-1 ¶ 20). Plaintiff also did not receive work requests during the September to December time period, and she was removed from a work-related email chain. (Doc. 44-25 ¶ 21; Doc. 47-1 ¶ 21). Plaintiff exhausted all hours of her FMLA leave on November 16, 2022, but she was permitted to stay on paid annual leave for up to seven additional weeks. (Doc. 44-25 ¶ 22; Doc. 47-1 ¶ 22).

When Plaintiff returned to work on December 2, 2022, she received a pre-disciplinary letter from her supervisor and LDVA's Chief of Staff concerning alleged work performance and behavioral deficiencies that allegedly occurred before Plaintiff went on leave on August 19, 2022. (Doc. 44-25 ¶ 23; Doc. 47-1 ¶ 23). The letter contemplated discipline up to and including termination. (Doc. 47-2 ¶ 16; Doc. 48-1 ¶ 16). Plaintiff had previously received improvement letters in February 2021 and February 2022, alleging poor work performance, insubordinate behavior, and lying about jury duty. (Doc. 44-25 ¶¶ 6–7; Doc. 47-1 ¶¶ 6–7; Doc. 44-12). On December 5, 2022, LDVA accepted Plaintiff's retirement in lieu of pursuing proposed discipline. (Doc. 47-2 ¶ 17; Doc. 48-1 ¶ 17). Plaintiff's last day of employment with

LDVA was January 8, 2023. (Doc. 44-25 ¶ 28; Doc. 47-1 ¶ 28).

## II. LEGAL STANDARD

A district court should "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Funches v. Progressive Tractor & Implement Co., L.L.C.*, 905 F.3d 846, 849 (5th Cir. 2018) ("This occurs when a party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

For issues on which the movant bears the burden of proof at trial, they "must come forward with evidence which would entitle [them] to a directed verdict if the evidence went uncontroverted at trial." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264–65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with evidence establishing a genuine dispute of material fact, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

Where the nonmovant bears the burden of proof at trial, the moving party must offer evidence that undermines the nonmovant's claim or point out the absence of evidence supporting essential elements of the claim. *See Lujan v. Nat'l Wildlife Federation*, 497 U.S. 871, 885 (1990). Once the movant shows entitlement to judgment as a matter of law, the nonmovant must bring forward

evidence to create a genuine issue of material fact. *Giles v. Gen. Elec. Co.*, 245 F.3d 474, 493 (5th Cir. 2001). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Darden v. City of Fort Worth*, 880 F.3d 722, 727 (5th Cir. 2018).

## III. DISCUSSION

There are two time periods relevant to Plaintiff's FMLA interference and retaliation claims. Plaintiff first alleges that Defendants interfered with her FMLA rights from August 19, 2022 through August 31, 2022 by requiring her to work while she was on FMLA leave. She then alleges that Defendants retaliated against her for exercising her FMLA rights after August 31, 2022 by disciplining her and constructively discharging her from employment.

Defendants ask the Court to issue summary judgment in their favor, arguing that they neither interfered with Plaintiff's FMLA rights, nor retaliated against her for exercising her FMLA rights.

### A. Plaintiff's FMLA Interference Claim.

"The FMLA was enacted to permit employees to take reasonable leave . . . for the care of a . . . spouse . . . who has a serious health condition." *Elsensohn v. St. Tammany Parish Sheriff's Office*, 530 F.3d 368, 372 (5th Cir. 2008) (citing 29 U.S.C. § 2601(b)(2)). The FMLA prohibits an employer from interfering with, restraining, or denying the exercise or attempted exercise of an employee's right to take FMLA leave. 29 U.S.C. § 2615(a)(1). "[T]he Act protects employees from interference with their leave as well as against discrimination or retaliation for

exercising their rights." *Bocalbos v. Nat'l W. Life Ins. Co.*, 162 F.3d 379, 383 (5th Cir. 1998).

"A prima facie case of FMLA interference requires an employee to show that '(1) he was an eligible employee; (2) his employer was subject to FMLA requirements; (3) he was entitled to leave; (4) he gave proper notice of his intention to take FMLA leave; and (5) his employer denied him the benefits to which he was entitled under the FMLA.'" *Campos v. Steves & Sons, Inc.*, 10 F.4th 515, 526 (5th Cir. 2021) (quoting *Caldwell v. KHOU-TV*, 850 F.3d 237, 245 (5th Cir. 2017)). A plaintiff must also show that the violation prejudiced her. *Id.* "Prejudice exists when an employee loses compensation or benefits by reason of the violation, sustains other monetary losses as a direct result of the violation, such as the cost of providing care, or suffers some loss in employment status such that equitable relief is appropriate." *Jones v. Children's Hosp.*, 58 F. Supp. 3d 656, 669 (E.D. La. 2014) (citing 29 U.S.C. § 2617(a)(1)).

Defendants dispute that the latter two elements have been satisfied here; that is, they argue that (1) Plaintiff did not give proper notice of her intention to take FMLA leave and (2) LDVA did not deny Plaintiff the FMLA benefits to which she was entitled.

The Court turns first to the issue of notice.

> "Although an employee need not use the phrase 'FMLA leave,' she must give notice that is sufficient to reasonably apprise her employer that her request to take time off could fall under the FMLA. This court does not apply categorical rules for the content of the notice; instead we focus on what is practicable based on the facts and circumstances of each individual. An employer may have a duty to inquire further if

> statements made by the employee warrant it, but the employer is not required to be clairvoyant."

*Lanier v. Univ. of Texas Sw. Med. Ctr.*, 527 F. App'x 312, 316 (5th Cir. 2013) (internal quotation marks and citations omitted). Under the FMLA, "[t]he critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition." *Greenwell v. State Farm Mut. Auto. Ins. Co.*, 486 F.3d 840, 842 (5th Cir. 2007).

The FMLA regulations state that "[w]hen an employee seeks leave for the first time for a FMLA-qualifying reason, the employee need not expressly assert rights under the FMLA or even mention the FMLA." 29 C.F.R. § 825.302(c).

> "The employer will be expected to obtain any additional required information through informal means. An employee has an obligation to respond to an employer's questions designed to determine whether an absence is potentially FMLA-qualifying. Failure to respond to reasonable employer inquiries regarding the leave request may result in denial of FMLA protection if the employer is unable to determine whether the leave is FMLA-qualifying."

29 C.F.R. § 825.303(b).

The Parties agree that Plaintiff requested leave to care for her husband. However, the Parties disagree over whether Plaintiff sufficiently apprised LDVA of her intent to request FMLA leave, or whether she simply requested sick leave. Plaintiff argues that her August 19, 2022 communications put Defendants on notice of her intent to take FMLA leave, but Defendants aver that she did not provide notice that she intended to take FMLA leave until either August 31, 2022, when her doctor faxed FMLA-related paperwork to LDVA, or September 2, 2022, when she sent an email to LDVA advising that she would not be able to work on account of her

husband's injury. (Doc. 47 at 8; Doc. 44-24 at 11).

In this case, Plaintiff has raised a genuine issue of material fact as to whether she provided the necessary notice to her employer on August 19, 2022, to sustain her FMLA interference claim. Defendants contend that Plaintiff "called LDVA and requested that she be placed on sick leave effective August 19, 2022, following an injury sustained by her husband" and that the "Human Resources Department gave [Plaintiff] paperwork for a physician to complete for FMLA leave in the event [Plaintiff] chose to pursue such leave." (Doc. 44-25 ¶¶ 8–9). However, Plaintiff argues that while she "requested leave effective August 19, 2022 following her husband's injury[,]" she "denies any implication that Defendants lacked notice of a potentially FMLA-qualifying absence at that time" and denies Defendants' "suggest[ion] [that] the provision of FMLA paperwork did not place Defendants on notice that Plaintiff's absence potentially qualified for FMLA protection." (Doc. 47-1 ¶¶ 8–9). The Parties' conflicting characterizations of the August 19, 2022 phone call, as well as the lack of sufficient detail about the phone call, creates a factual issue pertaining to the issue of FMLA notice that is best resolved by a jury.

Turning next to whether LDVA denied Plaintiff the FMLA benefits to which she was entitled by requesting and/or requiring that she work, a host of courts around the country have already addressed this issue. In a case before the United States District Court for the District of Columbia, the plaintiff contended that her employer "willfully interfered with her FMLA leave when [her supervisor], while she was on part-time leave, peppered her with work-related emails, assigned her tasks that were

disproportionate to her work schedule, and berated her for failing to complete those tasks while she was taking leave." *Jiggetts v. Cipullo*, 774 F. Supp. 3d 168, 209 (D.D.C. 2025). The district court found that the retaliation claim survived summary judgment, explaining that "[c]ourts have recognized that 'work requests during FMLA leave can constitute interference.'" *Id.* (citing *Mammen v. Thomas Jefferson Univ.*, 462 F. Supp. 3d 518, 525 (E.D. Pa. 2020)). The District of Columbia Court also explained that a jury could "find that [the plaintiff] was prejudiced by that interference because she was required to spend unpaid [FMLA] leave hours working." *Id. See also Smith-Schrenk v. Genon Energy Servs., L.L.C.*, No. CIV.A. H-13-2902, 2015 WL 150727, at *11 (S.D. Tex. Jan. 12, 2015) ("[A] factual dispute exists regarding whether plaintiff was required to work while on unpaid leave, and therefore, either lost compensation or suffered other damages as a result of the alleged FMLA interference.").

"The general consensus among courts is that reasonable contact limited to inquiries about the location of files or passing along institutional or status knowledge will not interfere with an employee's FMLA rights; however, asking or requiring an employee to perform work while on leave can constitute interference." *Smith-Schrenk*, 2015 WL 150727, at *9 (S.D. Tex. Jan. 12, 2015). *See also, e.g., Arban v. W. Pub. Corp.*, 345 F.3d 390, 402 (6th Cir. 2003) (plaintiff had a viable FMLA interference claim where he testified that, during his medical leave, his employer "called him on several occasions and requested that he provide customer lists and pending sales"); *Smith-Schrenk*, 2015 WL 150727, at *10 (plaintiff had a viable

FMLA interference claim where the plaintiff's employer asked her, during her FMLA leave, to update case files, complete a safety review project, and "personally deliver the safety review to the office").

Defendant argues that "[t]he FMLA does not create an absolute right to be left alone[.]" (Doc. 44-24 at 15) (citing *O'Donnell v. Passport Health Comms, Inc.*, 561 Fed. App'x. 212, 218 (3d Cir. 2014); *Callison v. City of Philadelphia*, 430 F.3d 117, 121 (3d Cir. 2005)). Indeed, de minimis contact that does not require an employee to perform work to benefit her employer and does not materially interfere with her leave does not constitute a FMLA interference. *O'Donnell*, 561 Fed. App'x. at 218. Nor is a request for materials from an employee to enable the employee's work to be performed while he is on leave an FMLA interference. *Sabourin v. Univ. of Utah*, 676 F.3d 950, 961 (10th Cir. 2012); *see also Kesler v. Barris, Sott, Denn & Driker, P.L.L.C.*, 482 F.Supp.2d 886, 910–11 (E.D. Mich. 2007) (occasional phone calls inquiring about files do not qualify as interference with FMLA leave).

However, "asking or requiring an employee to work while on leave can cross the line into interference." *Smith-Schrenk*, 2015 WL 150727, at *9. *See also Sherman v. AI/FOCS, Inc.*, 113 F. Supp. 2d 65, 70–71 (D. Mass. 2000) ("By essentially requiring Plaintiff to work while on leave . . . Defendant has 'interfered' with Plaintiff's attempts to take leave[.]"); *Arban v. West Publishing Corp.*, 345 F.3d 390, 405 (6th Cir. 2003) (asking employee to perform work-related tasks while he was on medical leave interfered with his rights under the FMLA).

Here, a factual dispute exists about the extent that Plaintiff was required to

work while on unpaid leave starting August 19, 2022. Defendant "submits that the communications LDVA had with Plaintiff, its CFO, were necessary conversations to ensure that the duties of the [CFO] would be handled and transferred in a manner that Plaintiff, the CFO, would desire[.]" (Doc. 44-24 at 14). Plaintiff, conversely, avers that "[t]he record reflects communications regarding supervision of fiscal staff, planning for departmental operations, performance evaluations, fiscal reports and agency deadlines. Defendants admit that during the August 23, 2022 conversation, they discussed Plaintiff's ongoing departmental responsibilities, daily fiscal operations, budget meetings, communication with staff, and completion of Plaintiff's annual performance evaluation." (Doc. 47 at 4). Ultimately, this is a factual inquiry best left to a jury. Accordingly, Defendants' motion for summary judgment is denied with respect to Plaintiff's FMLA interference claim.

**B. Plaintiff's FMLA Retaliation Claim.**

Plaintiff's second FMLA claim is that Defendants allegedly retaliated against her for exercising her FMLA rights after August 31, 2022 by disciplining her and constructively discharging her from employment.

"A prima facie showing of FMLA retaliation requires that a plaintiff show: (1) 'he was protected under the FMLA;' (2) 'he suffered an adverse employment action;' and (3) 'he was treated less favorably than an employee who had not requested leave under the FMLA or the adverse decision was made because he sought protection under the FMLA.'" *Campos v. Steves & Sons, Inc.*, 10 F.4th 515, 527 (5th Cir. 2021) (quoting *Mauder v. Metro. Transit Auth. of Harris Cnty., Tex.*,

446 F.3d 574, 583 (5th Cir. 2006)). This final element requires proof of a causal link between the FMLA-protected activity and the adverse action. *Id.* If a plaintiff makes a prima facie showing of FMLA retaliation, "the burden shifts to the employer to demonstrate a legitimate reason for the employee's discharge. If the employer demonstrates a legitimate reason for termination, the burden shifts back to the employee to show by a preponderance of the evidence that the employer's articulated reason is a pretext for discrimination." *Bell v. Dallas Cnty.*, 432 F. App'x 330, 333 (5th Cir. 2011) (citing *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 332 (5th Cir. 2005)) (internal citations and quotation marks omitted).

At this summary judgment stage, Plaintiff has made a prima facie showing of FMLA retaliation. Plaintiff was retroactively on FMLA leave beginning August 19, 2022. Plaintiff must show that her negative performance review delivered on August 30, 2022, and/or her December 2, 2022 pre-disciplinary letter were adverse employment actions that she only received because she had requested FMLA leave.[1] Defendants argue that Plaintiff's negative performance review was an evaluation of her work through June 30, 2022—that is, before she took her FMLA leave on August 19, 2022—and therefore could not be a response to her FMLA leave. (Doc. 44-24 at 17). Plaintiff replies that although some concerns regarding her work-related performance existed prior to her taking leave, she contends that her FMLA leave may have played a role in her performance review and "Defendants exaggerated

[1] Plaintiff elaborates that the adverse employment actions "include[e] a negative evaluation, heightened scrutiny, a pre-disciplinary process, disciplinary proceedings, threatened termination, lost wages, lost benefits, and circumstances resulting in her resignation." (Doc. 47 at 10).

or selectively relied upon prior incidents[,]" a factual issue a jury should resolve. (Doc. 47 at 11). Defendants also argue that Plaintiff overstates the pre-disciplinary letter: "Plaintiff was never disciplined while she was employed at LDVA, and she was not forced to resign from her employment." (Doc. 48 at 8). Plaintiff replies that the Parties factually dispute whether her resignation was voluntary or whether she was constructively discharged for using her FMLA leave, precluding the Court from granting summary judgment to Defendants. (Doc. 47 at 12).

"When evaluating whether the adverse employment action was causally related to the FMLA protection, the court shall consider the 'temporal proximity' between the FMLA leave, and the termination." *Mauder*, 446 F.3d at 583 (internal citation omitted). "[T]he plaintiff does not have to show that the protected activity is the only cause of her termination." *Id.* (internal citation omitted). "The plaintiff is, however, required to show that the protected activity and the adverse employment action are not completely unrelated." *Id.* (internal citation omitted). Courts have routinely found that close temporal proximity between FMLA leave and an adverse employment action is enough to establish a prima facie case of FMLA retaliation. *See, e.g.*, *Watkins v. Tregre*, 997 F.3d 275, 284 (5th Cir. 2021) (the plaintiff "was fired as immediately after her protected activity as established procedures would allow"); *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 578 (5th Cir. 2020) (retaliation plaintiff met prima facie burden "based on timing alone" by pointing to six-to-seven-week gap between protected activity and termination); *Garcia v. Pro. Cont. Servs., Inc.*, 938 F.3d 236, 243 (5th Cir. 2019) ("At the prima facie case, a

plaintiff can meet his burden of causation simply by showing close enough timing between his protected activity and his adverse employment action."). Here, Plaintiff received a negative performance review while she was out on FMLA leave and a pre-disciplinary letter the day she returned to work from FMLA leave, satisfying an initial prima facie showing.

Because Plaintiff made her initial prima facie showing, the burden then shifts to LDVA to demonstrate a legitimate reason for her discharge. Here, Defendants explain that Plaintiff's "Needs Improvement/Unsuccessful" rating was based on "well documented deficiencies in Plaintiff's work performance and behavior, all of which occurred prior to August 19, 2022." (Doc. 44-24 at 17). Defendants provided emails and documents issued before August 19, 2022, documenting Plaintiff's alleged work-related inadequacies. (Doc. 44-12). Without commenting on the accuracy of any alleged work-related inadequacies contained in the documents and emails, the documents and emails together establish that Defendants at least demonstrate a legitimate reason for Plaintiff's discharge unrelated to her FMLA leave.

The burden then shifts back to Plaintiff to show, by a preponderance of the evidence, that LDVA's articulated reason was pretextual. A plaintiff may raise a genuine dispute as to whether a proffered reason is pretext for FMLA retaliation by using "any evidence that casts doubt on the credence" of that reason. *Watkins v. Tregre*, 997 F.3d 275, 284 (5th Cir. 2021) (internal citation omitted). "A reason is unworthy of credence if it is not the real reason for the adverse employment action." *Id.* (internal citation and quotation marks omitted). The United States Court of

Appeals for the Fifth Circuit recently held that a plaintiff raised a genuine dispute of material fact as to pretext because of "the near-immediate temporal proximity of the discharge to the protected activity[.]" *Id.* at 285. The plaintiff's supervisor filed disciplinary-review-board request against her two days after she requested FMLA leave.

Here, after working for LDVA for over 15 years, Plaintiff received a negative performance evaluation while on medical leave and received a pre-disciplinary letter the day she came back from leave. Plaintiff contends that LDVA "exaggerated or selectively relied upon prior incidents" to discipline her. (Doc. 47 at 11). The Court is mindful that it must draw all reasonable inferences in favor of the non-moving party. After careful review of the record, the Court finds that Plaintiff has carried her burden of showing that her FMLA leave request may have played a role in LDVA's decision-making process and the reason for her discipline was potentially pretextual. Accordingly, Defendants are not entitled to summary judgment on Plaintiff's FMLA retaliation claim.

**C. Subject Matter Jurisdiction Over Back Pay And Reinstatement.**

Plaintiff seeks multiple forms of relief, including reinstatement and back pay. (Doc. 1 ¶ 91). Defendants argue that because the Louisiana Constitution grants the Louisiana Civil Service Commission exclusive jurisdiction to adjudicate removal and disciplinary cases involving civil service employees, this Court lacks subject matter jurisdiction to award Plaintiff reinstatement and back pay asserted against the state. (*Id.*).

Plaintiff responds that because her claims arise under the Family and Medical Leave Act—a federal statute which expressly authorizes federal courts to award back pay and reinstatement—the FMLA claims do not fall within the Commission's exclusive jurisdiction and this Court has subject matter jurisdiction to award her requested relief. (Doc. 47 at 13).

29 U.S.C. § 2617(a)(1) holds employer liable "for damages" equal to the amount of "any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation" and "for such equitable relief as may be appropriate, including employment, reinstatement, and promotion." 29 U.S.C. § 2617(a)(2) provides for federal subject matter jurisdiction to grant this relief: "An action to recover the damages or equitable relief prescribed in paragraph (1) may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees[.]" *See Minard v. ITC Deltacom Commc'ns, Inc.*, 447 F.3d 352, 353–54 (5th Cir. 2006) ("The enforcement section of the Act provides that any employer who interferes with or discriminates against the exercise of an employee's rights shall be liable to any eligible employee affected for damages as specified by the Act and for such equitable relief as may be appropriate, including employment, reinstatement, and promotion. [29 U.S.C. § 2617(a)(2)] also expressly creates a right of action and provides for federal and state court subject-matter jurisdiction[.]").

The Court finds that it has subject matter jurisdiction to grant Plaintiff reinstatement and back pay under the FMLA. In *Butler v.*

*Louisiana Dep't of Health & Hosps.*, the defendants also argued that the federal district court lacked subject matter jurisdiction over the plaintiff's claims, including an FMLA claim, because the Louisiana Constitution gives the Louisiana Civil Service Commission exclusive authority over removal and disciplinary cases. *Butler*, No. CV 07-723-SCR, 2008 WL 11351445, at *5 (M.D. La. Mar. 18, 2008). However, the Court found that it had previously rejected this argument, citing *Owens v. Louisiana State Dep't of Health & Hosps*, 2007 WL 4442269, 2 ("[T]he exhaustion of either state judicial or administrative remedies is not a prerequisite to the invocation of federal relief . . . since the causes of action established by those statutes are fully supplementary to any remedy, adequate or inadequate, that might exist under state law."). *Id.* The Court held that "Plaintiff's claims based on federal law do not fall within the Civil Service Commission's original jurisdiction. Thus, this court has jurisdiction over the plaintiff's federal law claims irrespective of the Civil Service Commission's jurisdiction." *Id. See also LeBeouf v. Manning*, No. CIV.A. 12-2583, 2015 WL 3650797, at *15 (E.D. La. June 11, 2015) ("[The defendant] also contends that to the extent [the plaintiff] maintains any state-law claims related to her employment with the Hospital, this Court is without jurisdiction because the Louisiana Civil Service Commission is vested with exclusive original jurisdiction over such claims. [The plaintiff] does not challenge this assertion and appears to abandon these state-law claims. Instead, [the plaintiff] contends that this Court has jurisdiction to hear her claims for *federal* constitutional and statutory violations. [The plaintiff's] contention is correct and is not in dispute.") (emphasis added); *Simien v.*

*Freeman*, No. CV 04-701, 2005 WL 8155617, at *3 (M.D. La. Mar. 23, 2005), *on reconsideration in part*, No. CV 04-701, 2005 WL 8155616 (M.D. La. July 19, 2005) (finding that the Court had subject matter jurisdiction over the plaintiff's § 1983 retaliation claim).

In other cases, federal district courts have dismissed *state* law claims, but not federal law claims, based on the Commission's exclusive jurisdiction. *See, e.g.*, *Beba v. New Orleans City*, No. CV 25-2530, 2026 WL 2240006, at *6 (E.D. La. Aug. 4, 2026) (holding that the "federal law claims pursuant to § 1983, Title VII, and the FMLA . . . are not within the exclusive jurisdiction of the CSC," contrasting it with *Sincere v. Westcott*, No. 25-2099, 2026 WL 406646, at *3, 4 (E.D. La. Feb. 13, 2026), which, per the *Beba* Court, held that "the federal court lacked subject matter jurisdiction over the plaintiff's claims because they alleged *state* statutory violations within the exclusive jurisdiction of the CSC" (emphasis added)); *Jackson v. St. Charles Par. Hous. Auth. Bd. of Commissioners*, 441 F. Supp. 3d 341, 355, 357, 361 (E.D. La. 2020) ("Defendants' argument misses the mark: while the CSC may have jurisdiction to hear certain state-law discrimination claims in conjunction with its exclusive jurisdiction over termination claims, it does not have jurisdiction to hear [federal law] claims[,]" and the federal district court had jurisdiction over the plaintiff's § 1983, FMLA, and Title VII claims); *Pike v. Off. of Alcohol & Tobacco Control of the Louisiana Dep't of Revenue*, 157 F. Supp. 3d 523, 540 (M.D. La. 2015) ("The Court agrees that Plaintiff is precluded from pursuing her *state law* termination claim based on disability discrimination if she did not pursue this claim

with the [Commission].") (emphasis added); *Jones v. Gee*, No. CV 18-5977, 2020 WL 564956, at *9 (E.D. La. Feb. 5, 2020) (dismissing "claims falling within the exclusive jurisdiction of the Louisiana Civil Service Commission" but not dismissing "plaintiff's remaining claims for retaliation under Title VII"); *Merida v. Bd. of Commissioners of Se. Louisiana Flood Prot. Auth.-E.*, No. CV 23-1992, 2024 WL 4252748, at *8 (E.D. La. Sept. 20, 2024) (analyzing the Commission's authority with respect to the plaintiff's state law claims).

Congress granted federal district courts jurisdiction to resolve FMLA disputes and grant the forms of relief that Plaintiff requests here. In accordance with this nation's Supremacy Clause, U.S. Const. art. VI, cl. 2, the Louisiana Constitution may not divest federal courts of subject matter jurisdiction over federal statutory claims. Therefore, the Court is vested with subject matter jurisdiction to grant back pay and reinstatement.

## IV. CONCLUSION

Accordingly,

**Defendants' Motion For Summary Judgment (Doc. 44)** is **DENIED**.

Baton Rouge, Louisiana, this 16th day of November, 2026

**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**